IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| JENGGI KALUOM, Individually, and on behalf of those similarly situated, § § § | |
| Plaintiff, § | CIVIL ACTION NO. 05-CV-642 |
| § | Pursuant to Rule 9(h), |
| V. § | Federal Rules of Civil Procedure - |
| § | ADMIRALTY |
| STOLT OFFSHORE INC., § § | |
| Defendant. § | |

**DEFENDANT'S SUMMARY JUDGMENT REPLY BRIEF**
**– AND –**
**SUPPLEMENTAL OPPOSITION TO PLAINTIFF'S MOTION FOR NOTICE**

Defendant Stolt Offshore Inc.[1] files this Summary Judgment Reply Brief and Supplemental Opposition to Plaintiff's Motion for Notice. Stolt will show the Court as follows:

### I.    INTRODUCTION

The United States Supreme Court has made it clear that federal statutes, like the FLSA, do not apply to the labor relations between a foreign vessel and its foreign crew even when the vessel enters a U.S. port, absent a clear indication of Congressional intent for the statute to apply. Even if the FLSA somehow applied in this case, the FLSA's section 213(f) exemption would bar Kaluom's claims. Kaluom's claims would also be barred by the FLSA's statute of limitations. Accordingly,

---

[1] Stolt now is known as Acergy US Inc. Acergy has been referred to as Stolt throughout the course of the these proceedings; therefore, for ease of reference, Acergy will be referred to as "Stolt" in this pleading.

summary judgment should be granted. Moreover, this matter should not proceed as a collective action and Plaintiff's Motion for Notice should be denied.[2]

## II.  ARGUMENT

### A.  The FLSA does not apply to foreign vessels even when they enter a U.S. port.

Although Kaluom was on board a foreign vessel, the DLB 801, he nevertheless claims that the FLSA applies because the vessel came to an American port in preparation for installing subsea oil and gas pipelines in the Gulf of Mexico.[3] The FLSA's wage and hour provisions, however, do not apply to foreign vessels - even when they enter a U.S. port.

The Supreme Court has long held that federal employment statutes do not apply to the labor relations between a foreign vessel and its foreign crew even when the vessel enters a U.S. port, absent a clear indication of Congressional intent for the statute to apply. *See Benz v. Compania Naviera Hidalgo, S.A.,* 353 U.S. 138, 141-42, 146-47 (1957); *McCulloch v. Sociedad Nacional de Marineros de Honduras,* 372 U.S. 10, 18-19, 21-22 (1963). In *Benz* and *McCulloch*, the Court held that it did not have jurisdiction under the National Labor Relations Act ("NLRA") to govern the respective rights and duties of a foreign ship and its foreign crew, even though the vessels entered U.S. ports. *See Benz*, 353 U.S. at 146-47; *McCulloch*, 372 U.S. at 18-19, 21-22. The vessels in those cases were crewed by foreign employees under employment agreements negotiated in foreign countries. *Benz*, 353 U.S. at 139; *McCulloch*, 372 U.S. at 13-14. When the vessels entered U.S. ports, the crews sought representation by American labor unions and the protections afforded by the NLRA. *Benz*, 353 U.S. at 139-43; *McCulloch*, 372 U.S. at 13-14.

---

[2] The full title of Plaintiff's Motion for Notice is "Plaintiff Jenggi Kaluom's Motion For Notice To Potential Plaintiffs For Collective Action Pursuant to 29 U.S.C. § 216(b), And Motion For Immediate Discovery."

In *Benz,* given that the seamen agreed "in Germany to work on the foreign ship under British articles," the Court held that "[w]e cannot read into the Labor Management Relations Act an intent to change the contractual provisions related to these parties." *Id.* at 146-47.  Similarly, the *McCulloch* court concluded that the NLRA did not apply to crews working on foreign-flag ships because "the law of the flag state ordinarily governs the internal affairs of a ship" and there was no affirmative intent by Congress for the statute to apply to foreign vessels.  372 U.S. at 17, 21-23.

The Supreme Court clarified and confirmed these decisions in *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119 (2005).  Disabled U.S. passengers filed a class action against a foreign cruise line that operated foreign-flag ships, alleging violations of Title III of the Americans With Disabilities Act of 1990 ("ADA").  *Id.* at 125-26.  The Court held that general statutes do not apply to conduct taking place aboard a foreign-flag vessel in United States territory if interests internal to the ship are at stake, rather than interests of the United States or its citizens, absent a clear statement of congressional intent.  *See id.* at 129-135.[4]

*Benz* and *McCulloch* should end this matter.  The FLSA is a U.S. employment statute that, if it were to apply, would affect the internal affairs of the DLB 801, a foreign vessel.[5]  The wages and hours of the crew are matters affecting the internal affairs of the vessel.  This is not a situation where

---

[3] *See* Plaintiff's Response at p. 5 (alleging that the DLB 801 was located within "a State of the United States" in that "Stolt operated the DLB 801 out of Fourchon, Louisiana").

[4] "This qualification derives from the understanding that, as a matter of international comity, 'all matters of discipline and all things done on board which affect only the vessel or those belonging to her, and [do] not involve the peace or dignity of the country, or the tranquility of the port, should be left by the local government to be dealt with by the authorities of the nation to which the vessel belonged.'"  *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 130 (2005).  Accordingly, the Court concluded that those requirements of the ADA that interfered with the "foreign-flag cruise ship's internal affairs" did not apply absent a clear congressional statement to the contrary.  *Id.* at 132-33.

[5] The *Spector* Court explained *Benz* and *McCulloch* as follows: "The [Supreme] Court held that the general terms of the [NLRA], did not govern the respective rights and duties of a foreign ship and its crew because the NLRA standards would interfere with the foreign vessel's internal affairs in those circumstances."  *Spector*, 545 U.S. at 131.

3

the lack of FLSA protection would affect the welfare of American citizens, the peace or dignity of the United States, or the tranquility of the port. *Id.* at 130-131.[6] The FLSA does not display a clear intention by Congress that it apply in this circumstance. Indeed, in the over 68 years since Congress passed the FLSA,[7] it does not appear that any court has applied the statute to the relations between a foreign vessel and its foreign crew, and it should not be applied here.

> **B.      A foreign vessel cannot be converted into an "American vessel" depending on who controls it.**

Because the FLSA does not apply to the DLB 801, a foreign vessel, Kaluom further claims that the DLB 801 became an "American vessel" by virtue of allegedly being "American *controlled*." Plaintiff's Response at p. 6. The Supreme Court has shed light on this issue as well. In *McCulloch*, it was similarly contended that the NLRA should apply to Honduran-flagged vessels owned by a Honduran corporation because an American corporation owned all the stock of the foreign corporation. 372 U.S. at 13-19. The Supreme Court rejected this approach and explained:

> But to follow such a suggested procedure to the ultimate might require that the [National Labor Relations] Board inquire into the internal discipline and order of all foreign vessels calling at American ports. Such activity would raise considerable disturbance not only in the field of maritime law but in our international relations as well. In addition, enforcement of Board orders would project the courts into

---

[6] The *Spector* Court held that some of the ADA allegations would not interfere with the internal affairs and management of a vessel. Those allegations related to claims by the U.S. passengers that the cruise ships charged disabled passengers higher fares, required them to pay special surcharges, maintained evacuation programs and equipment in locations not accessible to disabled individuals, and other policies related specifically to passengers on the ships. *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 133-34 (2005). On the other hand, the Court held that some of the allegations apparently did relate to the internal affairs of the foreign-flag cruise ships. Those allegations concerned physical barriers to access of the cruise ships. *Id.* at 134. For example, the disabled individuals alleged that many of the cabins on the cruise ships were not accessible to disabled passengers. Applications of Title III that would require a permanent and significant alteration of a physical feature of the ship would likely interfere with the internal affairs of foreign vessels. *Id.* at 134-35. As such, Title III would not apply to the foreign vessels absent a clear statement by Congress that it intended those regulations to apply. *Id.*

[7] June 25, 1938, c. 676, § 1, 52 Stat. 1060; *see* 29 U.S.C. § 201.

> application of the sanctions of the Act to foreign-flag ships on a purely ad hoc weighing of contacts basis. This would inevitably lead to embarrassment in foreign affairs and be entirely infeasible in actual practice. The question, therefore, appears to us more basic; namely, whether the Act as written was intended to have any application to foreign registered vessels employing alien seamen.

*Id.* at 18-19. Kaluom asks this Court to take the same action rejected by the Supreme Court in *McCulloch*. As a matter of law, however, Kaluom cannot transform a foreign vessel into an "American vessel" for purposes of the FLSA just by claiming that the foreign vessel is "American *controlled*."

### C. The DLB 801 was located in a workplace that is exempt from FLSA coverage.

As explained more fully in Stolt's Motion for Summary Judgment, there is yet another reason why Kaluom's claims must fail. The FLSA's section 213(f) exemption precludes the application of the minimum wage and maximum hour protections to an employee "whose services during the workweek are performed in a workplace within a foreign country or within territory under the jurisdiction of the United States." The exemption provides an exception if services are performed in a workplace located within the "outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (ch. 345, 67 Stat. 462) [43 U.S.C. 1331 et seq.]." *See* 29 U.S.C. § 213(f).[8] Kaluom does not come under this exception because the DLB 801 was not on the "outer Continental Shelf lands" as it was not "attached to the seabed . . . for the purpose of exploring for, developing, or producing resources therefrom." 43 U.S.C. § 1333(a)(1).

---

[8] Sections 206 and 207 do not apply with respect to "any employee whose services during the workweek are performed in a workplace within a foreign country or within territory under the jurisdiction of the United States other than the following: a State of the United States; the District of Columbia; Puerto Rico; the Virgin Islands; outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act (ch. 345, 67 Stat. 462) [43 U.S.C. 1331 et seq.]; American Samoa; Guam; Wake Island; Eniwetok Atoll; Kwajalein Atoll; and Johnston Island." 29 U.S.C. § 213(f).

Kaluom attempts to overcome section 213(f) by arguing that the DLB 801 was located within "a State of the United States" because "Stolt operated the DLB 801 out of Fourchon, Louisiana." Plaintiff's Response at p. 5. Stolt did not "operate" the vessel out of Fourchon, and Plaintiff presents no evidence to the contrary. The DLB 801 was temporarily in Fourchon in preparation for installing subsea oil and gas pipelines in the Gulf of Mexico. Where a foreign vessel is temporarily in an American port, section 213(f) continues to have force. *See Hodgson v. Union De Permisionarios Circulo Rojo*, 331 F. Supp. 1119, 1121-22 (S.D. Tex. 1971) (explaining that minimum wage did not apply to a Mexican company whose Mexican bus drivers performed "a minor part of their duties within the United States" because the foreign buses were "temporarily within the United States"; citing *Benz* and *McCulloch*).[9] In any case, as explained above, the FLSA's wage and hour provisions do not apply to foreign vessels even when they are in U.S. ports. *See Benz,* 353 U.S. at 141-42, 146-47; *McCulloch,* 372 U.S. at 18-19, 21-22; *Spector,* 545 U.S. at 129-35.

### D. Kaluom has failed to prove a "willful violation" for limitations purposes because this is a case of "first impression."

Kaluom does not contest that his claim would be barred by the FLSA's two-year statute of limitations. *See* Plaintiff's Response at p. 10; 29 U.S.C. § 255(a). Rather, Kaluom claims that the three-year limitations period for "willful violation[s]" applies. *See id*; 29 U.S.C. § 255(a). Kaluom correctly cites *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) for the definition of a "willful violation."[10] According to *McLaughlin,* a "willful violation" requires "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.*

---

[9] The Court's rationale appears to be based on section 213(f) as well as the principle of international law that "'[t]he laws of no nation can justly extend beyond its own territories, except so far as regards its own citizens'" and the "economic, political and administrative repercussions." *See Hodgson v. Union De Permisionarios Circulo Rojo*, 331 F. Supp. 1119, 1121-22 (S.D. Tex. 1971).

6

at 133.[11] The Supreme Court further clarified that negligence does not amount to willfulness. *See id.* at 134-35.[12] Thus, if an employer acts reasonably in determining its legal obligations, its actions are not willful. Even if the employer's actions are unreasonable, unless they are reckless, they are not willful.[13] Where the applicability of the FLSA raises "close questions" or "questions of first impression," moreover, there can be no willful violation. *See Dalheim v. KDFW-TV*, 706 F. Supp. 493, 510-11 (N.D. Tex. 1988), *aff'd,* 918 F.2d 1220 (5th Cir. 1990) (no willful violation where application of the FLSA presented "questions of first impression," determinations regarding whether employees fit into one category or another were "close ones," and employer believed that plaintiffs were exempt employees). Indeed, many courts in the United States have reached this same common sense result.[14]

Even if the FLSA applied to Kaluom's claims, Stolt's actions would not be "willful" because Kaluom raises "questions of first impression." *Id.* There is no precedent holding that the FLSA

---

[10] Plaintiff's Response at p. 10.

[11] *Accord Reich v. Bay, Inc.,* 23 F.3d 110, 117 (5th Cir. 1994) (adopting *McLaughlin* standard).

[12] The Court rejected the Petitioner's proposed willfulness standard because "[i]t would . . . permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption . . . ." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).

[13] The Court explained: "If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful . . . . If an employer acts unreasonably, but not recklessly, in determining its legal obligation," it cannot be willful either. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n. 13 (1988).

[14] *See, e.g., Reich v. Gateway Press*, 13 F.3d 685, 702-03 (3d Cir. 1994) (employers actions were not willful where the case presented "close questions of law and fact" as well as "a case of first impression with respect to one of the governing exemptions"); *Freeman v. National Broadcasting Co.,* 846 F. Supp. 1109, 1159 (S.D.N.Y. 1993), *rev'd on other grounds*, 80 F.3d 78 (2d Cir. 1996) (no willful violation where "application of the FLSA to broadcast journalism raise[d] issue[] of first impression" and defendant "viewed the application of the FLSA to plaintiffs as at least a close question"); *see also EEOC v. Madison Community Unit School Dist.,* 818 F.2d 577 (7th Cir. 1987) (compliance with a defensible although incorrect conception of "what a less then perfectly clear law required" is not a willful violation); *De Jesus De Luna-Guerrero v. N.C. Grower's Ass'n*, 370 F. Supp. 2d 386, 390 (E.D.N.C. 2005) (defendants' actions were not willful where the violation was "a matter of first impression"); *Armitage v. Emporia*, 782 F. Supp. 537, 545 (D. Kan. 1992), *rev'd and remanded on other grounds*, 982 F.2d 430 (10th Cir. 1992) (concluding that "negligence and an incorrect assumption that a pay plan complies with the FLSA do[es] not render a violation willful.").

applies to a Malaysian national, hired through a foreign crewing company, who worked aboard a foreign vessel owned by a foreign company, and performed services associated with a subsea pipeline installation project in the Gulf of Mexico. This is a creative but ultimately unpersuasive theory of liability to which Stolt has valid legal objections. Even if it were a "close question," under the authorities cited above, Stolt's actions would not be willful. Accordingly, Kaluom's claims are barred by the two-year statute of limitations.

Nevertheless, Kaluom claims that Stolt's actions were "willful" because Stolt's Contracts Manager, Linda Thomas,[15] was "not surprised" to hear that individuals like Kaluom were paid less than minimum wage and because she did not *personally* "check on" it. Plaintiff's Response at 10-11. Kaluom has failed to meet his burden of proof on willfulness. *See, e.g, Cox. v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990). Although Kaluom takes these statements out of context, it is important to note that "the Supreme Court specifically rejected a standard for 'willfulness' based on whether reasonable steps were taken to ensure that one's compliance with the FLSA is adequate under the law." *McIntyre v. Division of Youth Rehabilitation Services*, 795 F. Supp. 668, 675 (D. Del. 1992) (citing *McLaughlin*); *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134-35 (1988).[16]

In any case, Linda Thomas was asked, "Do you have someone who reviews the contract to make sure that you're not violating U.S. labor laws." Plaintiff's Response, Ex. 1 (Part 1 of 3) at pp.

---

[15] Ms. Linda Thomas' title later changed to Manager of Legal and Contracts.

[16] In a case involving similar allegations, plaintiff asserted that defendant's violation of the FLSA was willful because defendant did not attempt to ascertain its duties under the FLSA *even after plaintiff raised the issue* and defendant's employee stated that he believed the issue of overtime compensation was "ridiculous." *Troutt v. Stavola Bros.,* 905 F. Supp. 295, 302 (M.D.N.C. 1995). Even so, the Court concluded that at most this amounted to negligence. *Id.* In the present matter, there is no evidence that Kaluom ever asserted he was entitled to be paid in accordance with the FLSA. Thus, Kaluom's point is even weaker than the one rejected in *Troutt*.

99. She answered, "It's our understanding that foreign crew coming in on a foreign vessel, foreign flagged, foreign operated ship do not have to comply with U.S. labor wage rates." *Id.* Asked again whether anyone "reviews this to determine if it complies with U.S. labor laws," Ms. Thomas responded, "That would be a combination, as I said, Mark Waddell [Stolt HR Director] with outside counsel, Jerry Zollinger." *Id.* Finally, opposing counsel asked Ms. Thomas, "you don't think that – that that's something *you* need to check on . . . ." *Id.* at 103-04 (emphasis added). It was to this question that Ms. Thomas replied "No." *Id.* Kaluom's out of context quotes fail to establish his burden of proof on willfulness. This is a case of "first impression" and Kaluom has failed to establish that Stolt knew the FLSA applied or showed reckless disregard of the statute. Accordingly, Kaluom's claims are barred by the FLSA's two-year statute of limitations.

### III.   CONCLUSION

For the above-stated reasons, Defendant Stolt Offshore Inc. prays that the Court grant its Motion for Summary Judgment. Stolt further moves the Court to deny Kaluom's Motion for Notice and to grant Stolt all other relief to which it is entitled under the law.

Respectfully submitted,

KRAFT GATZ & DEVITT LLC

By: /s/ Ralph E. Kraft
    Ralph E. Kraft
    Federal ID No. 9831
    State Bar No. 000785329
600 Jefferson Street, Suite 410
Lafayette, LA 70501
Telephone: (337) 706-1818
Facsimile: (337) 706-1828

Attorney-In-Charge For Defendant
Stolt Offshore Inc.

                                              FULBRIGHT & JAWORSKI L.L.P.

                                              By: /s/ William P. Maines
                                                     William P. Maines
                                                     Federal ID No. 7159
                                                     State Bar No. 12849700
                                            1301 McKinney, Suite 5100
                                            Houston, Texas  77010-3095
                                            Telephone:  (713) 651-5151
                                            Facsimile:   (713) 651-5246

OF COUNSEL:

FULBRIGHT & JAWORSKI L.L.P.
   Amar A. Hasan
   Federal ID No. 601085
   State Bar No. 24048957
1301 McKinney, Suite 5100
Houston, Texas  77010-3095
Telephone:  (713) 651-5151
Facsimile:   (713) 651-5246

## CERTIFICATE OF SERVICE

     On January 19, 2007, a copy of this pleading was served via CM/ECF and/or Certified Mail/RRR on the following counsel in compliance with Rule 5 of the Federal Rules of Civil Procedure:

   Francis I. Spagnoletti
   State Bar No. 18869600
   1600 Smith, 45th Floor
   Houston, TX 77002
   Telephone: 713-653-5600
   Facsimile: 713-653-5656

                                                      /s/ William P. Maines
                                                        William P. Maines