IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JENGGI KALUOM, Individually, and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. G-05-642 |
| STOLT OFFSHORE, INC., | § § | |
| Defendant. | § § | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR NOTICE AND DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jenggi Kaluom ("Plaintiff"), on behalf of himself and those similarly situated, brings this action under the Fair Labor Standards Act (FLSA) to recover unpaid wages and overtime, plus damages, from Defendant Stolt Offshore, Inc. ("Defendant").  Plaintiff filed a Motion for Notice to Potential Plaintiffs for Collective Action Pursuant to 29 U.S.C. § 219(b) and Motion for Immediate Discovery.  Defendant filed an Opposition to Plaintiff's Motion for Notice.  Plaintiff then filed a Reply.  Defendant filed a Motion for Summary Judgment, and Plaintiff filed a timely Response thereto.  Defendant then filed a Summary Judgment Reply Brief and Supplemental Opposition to Plaintiff's Motion for Notice.  The Court, after duly considering said Motions and as fully explained below, **GRANTS** Plaintiff's Motion for Notice and **DENIES** Defendant's Motion for Summary Judgment.

**I.  Background**

Plaintiff, a Malaysian national, worked as a rigger or pipe-facing machine operator on a

1

foreign-flag vessel, DLB-801, operating on the Outer Continental Shelf in the Gulf of Mexico. Plaintiff alleges that he was employed by Defendant, and that Defendant was the owner *pro hac vice* of DLB-801.  Defendant is a Louisiana Corporation.

Plaintiff alleges that Defendant employed him and other similarly situated workers at pay rates less than the minimum wage standard set forth in the FLSA and that Defendant failed to pay overtime for hours worked in excess of forty each week.  Plaintiff requests that the Court allow him to send notice of the instant litigation to "all current and former maritime workers who worked for Defendant Stolt Offshore Inc., from January 1, 2002, to the present."  Such notice would advise potential class members of the litigation and allow them to opt-in.  Defendant opposes Plaintiff's Motion for Notice because, according to Defendant, (1) Plaintiff has presented no evidence that there are similarly situated individuals; (2) the proposed class is overly broad because many workers are excluded from the provisions of the FLSA; (3) the inquiry required for each prospective plaintiff is too fact-specific for a collective action; and (4) Plaintiff presents no evidence that other employees want to opt-in.

Additionally, Defendant has moved for summary judgment.  Defendant claims that Plaintiff is a seaman working on a foreign vessel and that, as such, the U.S. wage and hour laws do not apply. Plaintiff answers this allegation by claiming that, though the vessel is officially "foreign-flagged," it was controlled by Defendant to such an extent that Defendant was the owner *pro hac vice* of the vessel.  Thus, under Plaintiff's theory, the vessel comes within the FLSA's definition of "American vessel," and seamen on American vessels are not excluded from the minimum wage provisions of the FLSA. *See* Fair Labor Standards Act of 1938, 29 U.S.C. § 213(a)(12), 213(b)(6) (2000) (exempting all seamen from the maximum hour provisions of the FLSA and exempting seamen on vessels other than American vessels from both the minimum wage and maximum hour provisions of the FLSA).

Defendant also claims that Plaintiff's claims are barred by the doctrine of *res judicata* and by the two-year statute of limitations.  Plaintiff claims that *res judicata* is inapplicable in the instant case because the Court did not rule on any FLSA claims in any previous litigation.  And, Plaintiff asserts that the statute of limitations for this action is three years, not two, because Defendant willfully violated the FLSA wage and hour provisions.  The Court will first address Plaintiff's Motion for Notice.  Then, it will discuss Defendant's Motion for Summary Judgment.

## II.  Notice

*A.  Legal Standard*

Representative actions are authorized under the FLSA by "one or more employees for and in behalf of himself . . . and other employees similarly situated." Fair Labor Standards Act, 29 U.S.C. § 216(b).  In *Hoffman-LaRoche, Inc. v. Sperling*, the Supreme Court noted that Congress's policy reasons for allowing representative action litigation include "the advantage of lower individual costs to vindicate rights by the pooling of resources," and "[t]he judicial benefits [of] efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989). The Supreme Court determined that district courts must "have discretion, in appropriate cases, to implement [this section of the FLSA] . . . by facilitating notice to potential plaintiffs," because the benefits of representative action litigation necessarily "depend on employees receiving accurate and timely notice concerning the pendency of the collective action." *Id.* at 169–70, 110 S. Ct. at 486. Furthermore, district court involvement at the notice stage "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.* at 172, 110 S. Ct. at 487.

The Fifth Circuit extensively discussed the class certification procedure for an ADEA representative action, which incorporates the section of the FLSA covering representative actions, 29 U.S.C. § 219(b), in *Mooney v. Aramco Services*, 54 F.3d 1207, 1212–14 (5th Cir. 1995) (overruled on other grounds as recognized in *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 311 n.10 (5th Cir. 2004)).  The Fifth Circuit discussed two different approaches to representative actions under the ADEA and FLSA: the *Lusardi* approach and the *Shushan* approach. *See id.*; *see also Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990); *Lusardi v. Xerox Corp.*, 122 F.R.D. 463, 465–66 (D.N.J. 1988).  Due to recent changes in the Federal Rules of Civil Procedure and other reasons explained below, the Court finds that the *Lusardi* approach is preferable.

*1.* Lusardi *Approach*

Under the *Lusardi* approach, which has been the favored approach by courts in the Fifth Circuit, "the trial court approaches the 'similarly situated' inquiry via a two-step analysis." *Mooney*, 54 F.3d at 1213; *see also, e.g.*, *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 509 (M.D. La. 2005) (applying *Lusardi* because "the approach has been 'embraced' more often in the Fifth Circuit that the 'Spurious Class Action' found in *Shushan*").  The first step is the "notice stage," during which "the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Id.* at 1213–14.  The district court, using a "fairly lenient standard" due to the "minimal evidence" available, may conditionally certify the representative class, which gives the representative plaintiff a right to send notice of the opportunity to "opt-in" to putative class members. *Id.*

The second step involves a motion for decertification, which is generally filed as discovery nears completion and the trial is approaching. *Mooney*, 54 F.3d at 1214.  If the district court, which

4

at this stage has considerably more information, determines that not all of the claimants are similarly situated, then it will decertify the class and dismiss the claims of the opt-in plaintiffs without prejudice. *See id.*  If, however, the district court finds that the plaintiff and the opt-in plaintiffs are similarly situated, the case will proceed to trial. *See id.*

　　*2.* Shushan *Approach*

　　The second approach to representative class certification is the *Shushan* approach, which is also called a "Spurious Class Action." *See id. See generally Shushan*, 132 F.R.D. 263.  Under the *Shushan* approach, an FLSA or ADEA representative class is completely analogous to a Federal Rules of Civil Procedure Rule 23 class action—except that, under the FLSA or ADEA, potential class members who do not opt-in are not bound by the result. *See Mooney*, 54 F.3d at 1214; *see also* Fed. R. Civ. P. 23.  Thus, in order for a district court to certify the class and allow notice, the proposed class must meet the requirements of Rule 23:  numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P. 23.

　　The Court notes that Rule 23 has changed since the *Mooney* decision.  The 2003 amendments changed Rule 23(c)(1)(C).  The old Rule 23(c)(1)(C) stated that a class certification "may be conditional."  Now, Rule 23(c)(1)(C) states that the order certifying the class "may be altered or amended."  The Advisory Committee, in explaining this change, notes that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met," and admits that "[t]ime may be needed to gather information necessary to make the certification decision." *Id.* (advisory committee's notes).

　　Under Rule 23, "the *commencement* of a class action suspends the applicable statute of limitations as to all asserted members of the class . . . ." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S.

5

538, 554, 94 S. Ct. 756, 766, 38 L. Ed. 2d 713 (1974) (emphasis added).  Because the burden on the representative plaintiff in a Rule 23 motion for certification is so high, particularly given the change to Rule 23(c)(1)(C), it is likely that significant discovery will have to be undertaken before the representative plaintiff will be successful at getting a class certified.  The time taken for such discovery is almost inconsequential to potential plaintiffs, though, because the statute of limitations is tolled as soon as the representative plaintiff files the action.  However, under the FLSA, the statute of limitations is not tolled for a potential plaintiff until "written consent [by the potential plaintiff] is filed in the court in which the action was commenced." 29 U.S.C. § 256.  Thus, potential plaintiffs may lose their ability to join the action while the representative plaintiff is trying to collect enough evidence to meet the burdens imposed by Rule 23. *See* Fed. R. Civ. P. 23.  Such an outcome is contrary to the Supreme Court's instruction that in FLSA representative action cases the district court's monitoring of the "preparation and distribution of the notice" helps "ensure that it is *timely*, accurate, and informative." *Hoffman-La Roache*, 493 U.S. at 171, 110 S. Ct. at 487.  Thus, the Court finds that the *Shushan* approach is unjustifiably punitive and will apply *Lusardi*.

*B.  Analysis*

As discussed above, a district court's determination regarding a Motion for Notice involves a "fairly lenient standard." *Mooney*, 54 F.3d at 1214.  In the instant case, Plaintiff's First Amended Complaint makes substantial allegations regarding himself and others similarly situated.  Defendant claims that (1) Plaintiff has failed to present any evidence supporting his claim that other similarly situated, aggrieved individuals exist; (2) Plaintiff has failed to show that any of the alleged similarly situated individuals wish to opt-in to the class;  and (3) the class Plaintiff asks the Court to conditionally certify is too broad.  The Court addresses each of Defendant's arguments in turn.

First, the Court agrees that there is relatively minimal evidence that other aggrieved individuals exist. However, Plaintiff supplied the Court with two Stolt Offshore Crew Lists that contain the names and nationalities of crewmembers of DLB-801 for two separate voyages. There are numerous seamen listed, including foreign seamen. While there is no evidence regarding the pay received by these individuals, the Court finds it unlikely that any difference between Plaintiff's rate of pay and that of other foreign seamen working on the same vessel and doing the same type of work was substantially different. So, given the lenient standard at the notice stage, the Court finds the Plaintiff has met his burden of showing that there is a substantial likelihood other similarly situated individuals.

Next, Defendant claims that Plaintiff has failed to show that any of the similarly situated individuals wish to opt-in to the class. Defendant contends that such a showing is required at the notice stage and cites two district court opinions and two Eleventh Circuit opinions. *See Dybach v. Fl. Dept. of Corrections*, 942 F.2d 1562, 1567–68 (11th Cir. 1991) (instructing the district court to "satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions"); *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983) (upholding a district court's refusal to allow notice to potential plaintiffs when the only evidence was "counsel's unsupported assertions that FLSA violations were widespread and that additional plaintiffs would come from other stores"); *H&R Block v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (refusing to allow notice when the plaintiffs "failed to identify potential plaintiffs, submit affidavits of potential plaintiffs or submit any other evidence that might show a widespread plan of discrimination existed"); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361–62 (M.D. Ala. 1999) (following *Dybach* and requiring a

7

showing that there are other plaintiffs who desire to opt-in).  The Fifth Circuit has not yet instructed its district courts on this matter, but even if the Fifth Circuit endorsed the Eleventh Circuit's view that the representative plaintiff must show other plaintiff's wish to join the action, the facts of the instant case call for an exception.  None of the cases that have required such a showing involved foreign seamen, likely separated by thousands of miles and different languages.  The crewmember lists provided by Plaintiff clearly illustrate that seamen from different countries work on different vessels at different times.  It is exceedingly difficult for Plaintiff to find his fellow employees and get affidavits compared to a Plaintiff who has a job in which the same employees go to the same building every day.  Furthermore, there are obvious language barriers that do not exist in a typical FLSA action.  Thus, foreign seamen should not be required to present affidavits of fellow seamen indicating that they desire to join the class.

Defendant's final contention in opposition of Plaintiff's Motion for Notice is that Plaintiff's proposed class is too broad.  Plaintiff requests that the Court recognize the class defined as "all current and former maritime workers who worked for Defendant Stolt Offshore, Inc., from January 1, 2002, to the present."  (Pl.'s Mot. for Notice ¶ 3.4.)  Defendant contends that members of this proposed class are exempted from the FLSA.  Defendant claims that the maritime workers who are seamen are exempted from the FLSA's maximum hour provision and that the maritime workers who were on "a vessel other than an American vessel" are exempted from the FLSA's minimum wage and maximum hour protections. 29 U.S.C. § 213.  Defendant asserts that if Plaintiff is a seaman on a vessel other than an American vessel, he has no standing under the FLSA, and if he is a seaman on an American vessel, he is exempted from the FLSA's maximum hour requirements.  Furthermore, according the Defendant, if Plaintiff is not a seaman, his damages would be markedly different than

employees who are seamen.

The Court finds that Defendant's contentions regarding the definition of the proposed class have merit. Under the FLSA, seaman status "'depends upon the character of the work [the individual] actually performs and not on what it is called or the place where it is performed.'" *Martin v. Bedell*, 955 F.2d 1029, 1035 (5th Cir. 1992) (quoting 29 C.F.R. § 783.31 (1991)). "[W]ork is seaman's work if it is 'rendered primarily as an aid in the operation of [a] vessel as a means of transportation.'" *Owens v. Seariver Maritime, Inc.*, 272 F.3d 698, 704 (5th Cir. 2001) (quoting 29 C.F.R. § 783.31 (2000)). "'When a worker performs both seaman's work and nonseaman's work, he is a seaman unless his nonseaman's work is substantial in amount. [The Department of] Labor defines "substantial" as work that "occupies more than 20 percent of the time worked by the employee during the workweek."'" *Owens*, 272 F.3d at 702 (quoting *Bedell*, 955 F.2d at 1035–36 (quoting 29 C.F.R. § 783.37 (1991))). It is possible that maritime workers with different jobs on Defendant's vessels, such as riggers, mechanics, oilers, and electricians, spend more than 20% of their time engaged in nonseaman's work. Since some members of the proposed class may be FLSA seamen and some may not, not all of the individuals in Plaintiff's proposed class are similarly situated.

However, *some* members of the proposed class *are* similarly situated. The crew lists indicate that there were numerous "riggers" and "pipe-facing machine operators" on the vessels.[1] The crewmembers who performed the same work as Plaintiff likely engaged in roughly the same percentage of nonseaman's work as Plaintiff, so they are similarly situated. Thus, while the Court agrees that Plaintiff's proposed class may currently be too broad, it does not agree that this over-

---

[1]The lists use abbreviations for some of the crewmember occupations. One such abbreviation is "PFM Oper." The Court assumes said abbreviation stands for "pipe-facing machine operator."

9

breadth defeats Plaintiff's Motion for Notice.  Rather, the just result is to allow notice, but to limit discovery and notice to only those workers who are similarly situated.

Defendant urges that, if the Court allows notice and discovery, it should limit notice and discovery not only to those who performed the same work as Plaintiff, but also to those who worked on the same vessel as Plaintiff, were employed on a derrick/pipelay barge that was afloat on waters over the Outer Continental Shelf, and were employed by the same crewing company as Plaintiff. Defendant's requests to so limit discovery involve contentions that Plaintiff's workplace qualifies for the foreign workplace exemption of the FLSA, *see* 29 U.S.C. § 213(f), and that Plaintiff was not "employed" by Defendant. The Court will first address the foreign workplace exemption, then it will discuss Plaintiff's employer.

The foreign workplace exemption exempts certain American territories from the provisions of the FLSA. *See* 29 U.S.C. § 213(f) (exempting workers whose work is "performed in a workplace within a foreign country or within territory under the jurisdiction of the United States other than the following: a State of the United States; the District of Columbia; Puerto Rico; the Virgin Islands; outer Continental Shelf lands . . .; American Samoa; Guam; Wake Island; Eniwetok Atoll; Kwajalein Atoll; and Johnston Island").  However, as explained below in the Motion for Summary Judgment analysis, it is highly unlikely that Congress intended for the exemption to apply to vessels.  Thus, the Court will not limit discovery to only the vessel upon which Plaintiff worked.[2]  The Court will,

---

[2]The Court notes that there is a significant likelihood that seamen employed on vessels that do not regularly dock at U.S. ports will not be similarly situated to Plaintiff because the Act cannot apply unless the "engaged in commerce" requirement is met. *See, e.g.*, 29 U.S.C. § 202(a) (that the detrimental working conditions that affect commerce and were the impetus for the FLSA occur "in industries engaged in commerce or in the production of goods for commerce"); § 203(s) (defining "enterprise engaged in commerce or in the production of goods for commerce"); § 206(a) (setting forth the minimum wage requirements for employees who are "engaged in

however, entertain a Motion to Decertify after more discovery if Defendant can show that any new plaintiffs from other vessels are not similarly situated, and Plaintiff's burden at that stage will be significantly higher.

Next, Plaintiff claims that Defendant was his employer even though he was technically employed by a manning company, PPSB. Defendant claims that Plaintiff only has a claim against it if he successfully shows that Defendant and PPSB were joint employers. According to Defendant, this inquiry, which involves the Economic Reality Test, will be different depending on which company technically employs potential plaintiffs. *See Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1327 (5th Cir. 1985) (discussing the criteria for determining whether a worker is an "employee" under the FLSA). Thus, since many of the potential plaintiffs that fall under Plaintiff's defined class were employed by companies other than PPSB, Defendant claims they cannot be similarly situated. Plaintiff alleges that all the individuals were ultimately in Defendant's employ and that the individual manning companies are irrelevant. Because the requirements at the Notice stage are minimal, the Court is not inclined to limit the Notice and discovery to only those workers who were employed by PPSB. If Defendant can show that the Economics Reality Test produces significantly different results for different employers after discovery has been conducted regarding the other employers, then Defendant should move for decertification at that time.

In sum, the Court agrees that the class should be limited to those employees who performed the same type of work as Plaintiff, but the Court does not agree that the class should be limited to

_____

commerce or in the production of goods for commerce"). However, at this juncture, the Court is not inclined to so limit discovery. There must, however, be a significant nexus between Plaintiff and any other workers who opt-in that worked on vessels other than the DLB-801 for Plaintiff to survive a Motion for Decertification after discovery has been conducted.

those who worked on the same vessel as Plaintiff, were employed on a derrick/pipelay barge that was afloat on waters over the Outer Continental Shelf, and were employed by the same crewing company as Plaintiff. The Court finds the class should be defined as follows: ***all current and former foreign maritime workers who worked as riggers or pipe-facing machine operators for Defendant Stolt Offshore, Inc., from January 1, 2002, to the present.*** Therefore, the Court **APPROVES** Plaintiff's proposed Notice to Potential Plaintiffs of Lawsuit Under the Fair Labor Standards Act except that the Notice must be *modified* to include only those maritime workers who worked as riggers or pipe-facing machine operators.

In accordance with the above discussion, the Court **ORDERS** Defendant to produce the following information within the next thirty (30) days:

(1) A complete list of the names, current addresses, dates of employment, and dates of termination of all foreign workers employed by Defendant from January 1, 2002, to the present who worked as riggers or pipe-facing machine operators offshore of the United States;

(2) The pay rates for each person identified, whether hourly, daily, or some other rate, and the amounts paid for all hours, days or shifts worked, including overtime.

## III. Summary Judgment

*A.  Legal Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552–53, 91 L. Ed. 2d 265 (1956).  The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of

12

a genuine issue of material fact."[3]  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553.  The non-moving

party must come forward with "specific facts showing there is a genuine issue for trial."  Fed. R. Civ.

P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.

Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  The court must view all evidence in the light most favorable

to the non-movant.  *See, e.g.*, *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003).

If the evidence would permit a reasonable fact finder to find in favor of the non-moving party,

summary judgment should not be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  However, "[t]he mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence

on which the jury could reasonably find for the plaintiff."  *Id.* at 252, 106 S. Ct. at 2512.  Determining

credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  *See id.*

at 255, 106 S. Ct. at 2513.

*B.  Analysis*

Defendant claims that summary judgment is appropriate because the FLSA does not apply in

this case.  First, Defendant claims that Plaintiff was employed as a seaman on a foreign vessel and,

as such, the FLSA wage and hour laws are not applicable.  Second, Defendant contends that the

foreign workplace exemption is applicable because the  vessel upon which Plaintiff worked was not

attached to the seabed of the Outer Continental Shelf.  Third, Defendant claims that Plaintiff's claims

should be barred under the doctrine of *res judicata*.  Defendant's final contention is that the FLSA

---

[3]However, if the moving party "bears the burden of proof on an issues, either because he
is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond
peradventure *all* of the essential elements of the claim or defense to warrant judgment in his
favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

statute of limitations bars Plaintiff's claims.   The Court will consider each of these contentions in turn.

### 1.  The Meaning of "American" Vessel

Under § 213 (a)(12) of the FLSA, "any employee employed as a seaman on a vessel other than an *American* vessel" is exempt from both the minimum wage and maximum hours provisions of the FLSA. 29 U.S.C.§ 213 (a)(12) (emphasis added).   Defendant claims that the vessel upon which Plaintiff was employed is owned by a Bermuda corporation and is documented under the laws of Panama.   Plaintiff claims that Defendant, an American company, was the owner *pro hac vice* of the vessel, and, as such, the vessel should be considered an *American* vessel.

The term "American vessel" is defined in § 203(p) as "*includ[ing]* any vessel which is documented or numbered under the laws of the United States. 29 U.S.C. § 203(p) (emphasis added). The Code of Federal Regulations clarifies that "the wor[d] 'includes' is used in the sense of 'embracing', as an enlargement and not as a word of limitation.   The term may therefore apply to other vessels that do not fall within the illustrations given." 29 C.F.R. § 783.42.   Defendant urges the Court to reject interpreting such an instruction as indicating that a foreign vessel can be deemed an American vessel, pointing out that 29 C.F.R. § 783.38 states: "An 'American vessel', which would appear to signify a vessel of the United States as distinguished from a foreign vessel, 'includes', under the terms of the definition in section 3(p) of the Act, 'any vessel which is documented or numbered under the laws of the United States.'" (quoting §§ 203(p), 213(a)(12)).

Defendant further claims that the legislative history of FLSA amendment adding "on a vessel other than an American vessel" to § 213(a)(12) indicates that Congress intended the amendment to cover only American-flag vessels.   Defendant refers the Court to Senate Reports that refer to seamen

on "American-flag" vessels. *See* S. Rep. No. 87-145, pt. 3 (1961), 1961 U.S.C.C.A.N. at 1628, 1670. The Court does not find Defendant's argument persuasive. While the legislative history does refer to "American-flag vessels," it also refers to "American vessels." Arguing that Congress meant "American-flag vessels" seems to be a clear example of "'"looking over a crowd and picking out your friends."'" *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, ___, 125 S. Ct. 2611, 2626, 162 L. Ed. 2d 502 (2005) (quoting Patricia M. Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 Iowa L. Rev. 195, 214 (1983) (quoting the Author's conversation with the late Judge Harold Leventhal)). The Supreme Court has warned that "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material." *Exxon Mobil Corp.*, 545 U.S. at ___, 125 S. Ct. at 2626. The Supreme Court reasoned that "judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text." *Id.*

In sum, the statute expressly excludes seamen on "American vessels," not "American-flag vessels," and the Code of Federal Regulations specifically instructs that vessels other than those formally documented may be considered American vessels. The legislative history of the amendment does not override the statutory text. Therefore, the Court will proceed with the assumption that, in the right circumstances, a vessel not formally documented as an American vessel could be an American vessel under the FLSA.

*2. Is DLB-801 an "American vessel"?*

Plaintiff claims that the vessel on which he worked should be considered an American vessel

because Defendant was the owner *pro hac vice* of the vessel.  Defendant takes issue with Plaintiff's theory, claiming that the Supreme Court rejected the notion that a foreign-flag vessel could be transformed into an American vessel because it is American controlled in *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 83 S. Ct. 671, 9 L. Ed. 2d (1963). The *McCulloch* Court was considering whether the National Labor Relations Act (NLRA) covered foreign-flag ships. In *McCulloch*, the Supreme Court determined that applying the NLRA to foreign-flag ships "would raise considerable disturbance not only in the field of maritime law but in our international relations as well." *Id.* at 19, 83. S. Ct. at 676.  *McCulloch*, however, is easily distinguished from the instant case.  First, *McCullogh* involved the NLRA, not the FLSA.  Second, there was no contention in *McCullogh* that an American company was the owner *pro hac vice* of the ships. *But see Am. Radio Ass'n v. Mobile S.S. Ass'n, Inc.*, 419 U.S. 215, 220 n.5, 95 S. Ct. 409, 413 n.5, 42 L. Ed. 2d 399 (1974) (determining, in an NLRA case, that whether a vessel flying a foreign flag was American owned was irrelevant due to the *McCulloch* decision).  Instead, the National Labor Relations Board argued that  the ships had significant contacts with the United States because they regularly traveled between foreign ports and the United States and because a U.S. company owned the foreign company that owned the ships.  Here, Plaintiff's argument does not involve the vessel's contacts with the United States; instead, it involves whether a U.S. company controlled DLB-801 to such an extent that the U.S. company should be considered the owner *pro hac vice*.

It is undisputed that Defendant entered into a "Time Charter Party" agreement for the use of the DLB-801.  Generally, in a time charter, "the vessel owner retains possession and control of the vessel; provides whatever crew is needed and is responsible for normal operating expenses.  Further, in a time charter the owner fully equips and maintains the vessel, makes repairs as needed and

provides insurance on the vessel." *Walker v. Braus*, 995 F.2d 77, 81 (5th Cir. 1993); *see also Wiltz v. Maersk, Inc.*, 135 F. Supp. 2d 783, 785 (S.D. Tex. 2001).  Conversely, a bareboat or demise charter allows "the full possession and control of the vessel" to be "transferred to the charterer." *Walker*, 995 F.2d at 81.

> Under a bareboat or demise charter the vessel is transferred without crew, provisions, fuel or supplies, i.e. "bareboat"; and when, and if, the charterer operates the vessel he must supply also such essential operating expenses.

*Id.*  Plaintiff claims that, in the instant case, regardless of the title of the agreement transferring usage of the vessel, Defendant maintained full possession and control of the vessel.  As summary judgment evidence, Plaintiff presents the Court with Deposition testimony and other evidence indicating that Defendant supplied the foreign labor for the DLB-801, that Defendant arranged to provide the food and cooks for the DLB-801, and that Defendant directed the performance of the activities aboard the DLB-801.  Finally, and most compelling, Plaintiff presents evidence that one of Defendant's employees was the barge superintendent, which, according to Deposition testimony, is "equivalent to the master of the vessel." (Hebert Dep. 18:14–15.)  Generally, a master is the "individual having command of a vessel." 46 U.S.C. § 10101(1).  While this evidence is by no means definitive regarding the true nature of the charter agreement, it presents enough of an issue of material fact to survive summary judgment.  Thus, because the Court must consider the evidence in the light most favorable to Plaintiff, the Court will, for the purposes of the Motion for Summary Judgment, consider the DLB-801 to be an "American vessel."  The Court reminds Plaintiff, however, that the burden of proving a demise charter at trial will be heavy because "Courts are reluctant to find a demise [charter]." *Guzman v. Pichirilo*, 369 U.S. 698, 700, 82 S. Ct. 1095, 1097, 8 L. Ed. 2d 205 (1962).

### 3. Foreign Workplace Exemption

Under § 213(f) of the FLSA, the minimum wage and maximum hour provisions of the FLSA do not apply to an employee

> whose services during the workweek are performed in a workplace within a foreign country or within territory under the jurisdiction of the United States other than the following: a State of the United States; the District of Columbia; Puerto Rico; the Virgin Islands; outer Continental Shelf lands . . .; American Samoa; Guam; Wake Island; Eniwetok Atoll; Kwajalein Atoll; and Johnston Island.

29 U.S.C. § 213(f).  Plaintiff worked on DLB-801, which is a combination derrick/pipelay barge, during the installation of subsea oil and gas pipelines in the Gulf of Mexico.  Defendant reasons that DLB-801 was within a territory under the jurisdiction of the United States (the water over the Outer Continental Shelf) and that any employees who worked on the vessel are exempt from the minimum wage and maximum hour provisions of the FLSA under § 213(f) unless the vessel was within a State, one of the territories listed, or on the Outer Continental Shelf as defined in the Outer Continental Shelf and Lands Act (OCSLA).  In order for the vessel upon which Plaintiff was working to be subject to OCSLA, it must have been "attached to the seabed . . . for the purpose of exploring for, developing, or producing resources therefrom." 43 U.S.C. § 1333(a)(1).  Plaintiff does not contend that DLB-801  was so attached.

Whether § 213(f) of the FLSA applies to a vessel is an issue of first impression in this Circuit.  In *N.L.R.B. v. Dredge Operators, Inc.*, the Fifth Circuit, citing Restatement (Third) of the Foreign Relations Law of the United States § 501, definitively states that "a United States flag vessel is considered American territory." *See N.L.R.B. v. Dredge Operators, Inc.*, 19 F.3d 206, 212 (5th Cir. 1994).  As such, the Fifth Circuit determined that the National Labor Relations Act (NLRA) applied to a U.S. flag vessel that was not sailing in American waters. *Id.*  The Fifth Circuit did not directly address the FLSA in *Dredge Operators*, but it extensively examined a case from the Third Circuit,

18

*Cruz v. Chesapeake Shipping, Inc.*, that discussed whether § 213(f) of the FLSA applied to a U.S. flag vessel. *See Dredge Operators,* 19 F.3d at 211–12 (discussing *Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218 (3d Cir. 1991).

In *Cruz*, workers on eleven vessels that were located in the Persian Gulf in wartime attempted to invoke the provisions of the FLSA because the vessels were flying the U.S. flag.  The flag was a "flag of convenience," flown to provide the protection of the United States. *See Cruz*, 19 F.2d at 227. The Third Circuit upheld the district court's ruling that the FLSA does not apply merely because the vessels were temporarily flying the United States flag. *See id.* at 231–32.  The Judge writing the Opinion in *Cruz* wrote that "the premise that a vessel flying the American flag . . . is a floating piece of American Territory for all purposes . . . is untenable." *Id.* at 227.  If one were arguing that *Cruz* controlled the instant case, then one could claim that the vessel in the instant case should also not be considered a "floating piece of American Territory" when considering FLSA applicability.  However, in *Dredge Operators*, the Fifth Circuit points out that neither of the other two Judges on the *Cruz* panel agreed with the written Opinion—one concurred in the Judgment only, and one dissented.  The Fifth Circuit favored Judge Alito's view in the *Cruz* dissent that "'[v]essels flying the American flag have long been regarded "as part of the territory of [the] nation."'" *Dredge Operators, Inc.*, 19 F.3d at 212 (quoting *Cruz*, 19 F.2d at 238 (Alito, J., dissenting) (quoting *Patterson v. Eudora*, 190 U.S. 169, 176, 23 S. Ct. 821, 823, 47 L. Ed. 1002 (1903))).  Thus, while *Dredge Operators* did not involve § 213(f), its reiteration of the long-standing tradition that U.S. flag vessels are part of U.S. territory and its apparent disagreement with the *Cruz* reasoning lend strong support to the notion that an American vessel is an American territory—regardless of which statute one is applying. *See also Alcoa Marine Corp.*, 240 N.L.R.B. 1265 (1979) (determining that, under the NLRA, a U.S. flagship is a

territory of the United States).

If the Fifth Circuit considers U.S. vessels to be U.S. "territory," then would not § 213(f) of the FLSA, which does not delineate vessels as being one of the protected territories, prohibit the FLSA's applicability to all U.S. vessels?  While the plain language of the subsection, read alone, would support such a conclusion, the answer is "no."  One need only consider the other subsections of § 213 to realize that if such an interpretation were made, the subsections would clearly be in conflict.  Section 213(a)(12) exempts "any employee employed as a seaman on a vessel other than an American vessel" from the FLSA minimum wage and maximum hour requirements.  There would be no need to differentiate between seamen in American and non-American vessels at all if Congress had intended for § 213(f) to exempt workers on all vessels.  Also, § 213(b)(6) exempts "any employee employed as a seaman" from the maximum hour provisions, but not from the minimum wage provisions, of the Act.  If § 213(f) exempted all workers on vessels from all the provisions of the FLSA, then why would Congress have specifically exempted seamen from the maximum hour provisions and not the minimum wage provisions?  It is clear that Congress did not intend for § 213(f) to apply to seamen and vessels at all.  Instead, § 213(f) applies to specific geographical locations.

Furthermore, the geographical location of a vessel is transient.  If a worker works on land in a foreign country, that worker's proximity to the United States and its impact on the U.S. economy are not likely to change substantially from one week to the next.  However, if a worker works on a vessel, the worker's proximity to the United States and the impact of said worker on the U.S. economy could change substantially from one week to the next.  Therefore, exempting all vessels, as territories, from the provisions of the FLSA would not further the purpose of the FLSA, which is to "protect the standard of living and general well-being of the worker in *American industry*." *Alvarado*

*Guevara v. I.N.S.*, 902 F.2d 394, 396 (5th Cir. 1990) (emphasis added).  A better interpretation of §
213(f) is that "Congress envisioned that the list of covered territories in section 213(f), plus any
additional locations that are *expressly identified as covered elsewhere* in the FLSA (such as the area
on an American vessel), would be comprehensive." *Smith v. Raytheon Co.*, 297 F. Supp. 2d 399, 402
(D. Mass. 2004) (emphasis added) (footnote omitted).

　　　Defendant's claim that the vessel was *within* a territory not covered fails for the same reasons.[4]
Congress would not have specifically covered seamen and vessels elsewhere in § 413 if it meant for
§ 413(f) to govern whether or not the vessel was covered according to its location.  Furthermore, the
notion that a vessel is covered by the FLSA if it is *within* Louisiana, as it would be when it is within
three miles of Louisiana's coast, and not covered by the FLSA when it ventures *outside* of Louisiana,
for instance, if it is four miles from the coast, is absurd. *Cf. Lauritzen v. Larsen*, 345 U.S. 571, 583,
73 S. Ct. 921, 929, 97 L. Ed. 1254 (1953) ("The test of location of the wrongful act or omission,
however sufficient for torts ashore, is of limited application to shipboard torts, because of the varieties
of legal authority over waters she may navigate."); *id.* at 585, 73 S. Ct. at 930 ("[T]here must be some
law on shipboard, . . . it cannot change at every change of waters, and no experience shows a better
rule than that of the state that owns her.").  Again, the "purpose of the Act was to eradicate from
interstate commerce the evils attendant upon low wages and long hours of service." *McComb v.
Farmers Reservoir & Irrigation Co.*, 167 F.2d 911, 913 (10th Cir. 1948), *affirmed* 337 U.S. 755, 69
S. Ct. 1274, 93 L. Ed. 1672 (1949); *see* 29 U.S.C. § 202 (delineating Congress's policy reasons for

---

　　　[4]Plaintiff argues that the vessel was based at Fourchon, Louisiana.  As such, according to
Plaintiff, the vessel was *within* Louisiana whenever it was docked.  Defendant denies that DLB-
801 was based at Fourchon, but Defendant does not deny that it was often *at* Fourchon.  Thus,
even if one were to read § 213(f) in isolation, DLB-801 was undoubtedly *in* a protected territory
at least some of the time.

enacting the FLSA).  The occurrence of such evils on a vessel involved in the installation of subsea oil and gas pipelines in the Gulf of Mexico has the same impact on interstate commerce when the vessel is three miles out as when it is four.[5]

*4.*  Res Judicata

Defendant's third contention is that the claims Plaintiff now files should have been asserted in his penalty wage lawsuit, which was filed in 2004.  This Court granted summary judgment against Plaintiff in the penalty wage lawsuit.  *See Kaluom v. Stolt Offshore, Inc.*, CA G-04-609, 2006 WL 287975 (S.D. Tex. Feb. 6, 2006).  The penalty wage lawsuit did not involve FLSA claims, and the Court expressly stated in the Order granting summary judgment that there were no FLSA claims in that case, and it noted that there was other pending litigation in this Court for alleged FLSA violations–namely the instant case. *Id.*  The Court was aware that there were two separate cases, and it chose to address them separately.  Thus, the doctrine of *res judicata* does not apply.

*5.  Statute of Limitations*

Defendant's final argument is that Plaintiff's FLSA claims are barred by the statute of limitations.  The FLSA contains a two-year statute of limitations, and Plaintiff's claims were filed on November 28, 2005. *See* 29 U.S.C. § 255(a). Plaintiff's last payment voucher is dated March 11, 2003.  So, Plaintiff filed his claim more than two years after Plaintiff received his last payment voucher.  However, if Plaintiff can show that the alleged violation was willful, then the statute of limitations is extended to three years. *See id.*  A willful violation is one in which the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the

---

[5]While Defendant has not argued that DLB-801 was not engaged in commerce, the Court notes that the commerce requirement could become an issue at the decertification stage.

statute." *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988).

Plaintiff claims that Defendant either knew that its foreign workers who were working in the Gulf of Mexico were being paid less than minimum wage or at least recklessly disregarded the information. Plaintiff in fact alleges that Defendant was knowingly engaging in this practice in an attempt to circumvent United States labor laws. Plaintiff cites deposition testimony from Defendant's Manager of Legal and Contracts, Linda Thomas, in which she testifies that she would not be "surprised" to learn that Defendant paid its foreign workers less than minimum wage. (Thomas Dep. at 101.) She also testified that the foreign workers "entered into agreements and agreed on a wage scale, and it is what it is." (Thomas Dep. at 103.) Additionally, she testified that the schedule the foreign workers worked is "a personal choice," and explained, "If [working 12 hours a day, 120 days on, with no weekends or holidays] is the working environment that these particular foreign individuals are accustomed to worldwide, it doesn't bother me. Should it bother me if they're working in Malaysia under those conditions? It doesn't bother me. That's their standard that they've set and they're happy. They're happy to have these jobs." (Thomas Dep. at 104–05.) The problem with Thomas's reasoning is that said workers were *not* working in Malaysia. They were working in the Gulf of Mexico on a vessel that, for the purposes of this Motion, was an American vessel. The vessel was engaged in work that has a tremendous impact on commerce in the United States. Furthermore, if Defendant is able to employ foreign workers working off of the Coast of Louisiana under working conditions that Congress has deemed unacceptable for American workers, then there is nothing to stop them from "outsourcing" all of the jobs on vessels in the Gulf, which would have dire economic consequences for families throughout the Gulf Coast region.

23

Congress cannot control the conditions individuals working in Malaysia and elsewhere are forced to endure.  It can, and *has*, however, enacted humanitarian standards for the conditions under which seamen, *all* seamen, who work on *American* vessels, work.[6]  Thomas's testimony raises an issue of material fact sufficient to overcome Defendant's Motion for Summary Judgment as to whether Defendant knew or showed a reckless disregard for the wages it was paying its foreign workers.  Thus, the statute of limitations does not bar this claim.

## IV.  Conclusions

In sum, Plaintiff has presented the Court with sufficient issues of material fact to overcome Defendant's Motion for Summary Judgment.  Thus, Defendant's Motion for Summary Judgment is **DENIED**.  Plaintiff has also met his burden of showing there are other similarly situated individuals, and therefore, Plaintiff's Motion for Notice, subject to the modifications discussed above, is **APPROVED**.  Plaintiff's Motion for Immediate Discovery is likewise, subject to the modifications

---

[6]In *Patterson v. Eudora*, the Supreme Court held that a U.S. law regarding payment of seamen was applicable to *foreign* vessels in U.S. ports and did not abridge the liberty of contract. *Eudora*, 190 U.S. 169, 23 S. Ct. 821.  Justice Brewer eloquently wrote:

> If the necessities of the public justify the enforcement of a sailor's contract by exceptional means, justice requires that the rights of the sailor be in like manner protected.  The story of the wrongs done to sailors in the larger ports, not merely of this nation, but of the world, is an oft-told tale, and many have been the efforts to protect them against wrongs.  One of the most common means of doing these wrongs is the advancement of wages.  Bad men lure them into haunts of vice, advance a little money to continue their dissipation, and, having thus acquired a partial control, and by liquor dulled their faculties, place them on board the vessel just ready to sail and most ready to return the advances.  When once on shipboard, and the ship at sea, the sailor is powerless and no relief availing.  It was in order to stop this evil, to protect the sailor, and not to restrict him of his liberty, that this statute was passed.  And, while in some cases it may operate harshly, no one can doubt that the best interests of seamen as a class are preserved by such legislation.

*Id.* at 175, 23 S. Ct. at 823.  The best interests of seamen as a class are likewise preserved, to the extent the U.S. Congress can do so, by the FLSA.

24

discussed above, **APPROVED**.  Defendant is **ORDERED** to produce the information detailed above within the next thirty (30) days.  Each  Party is to bear its own taxable costs, expenses, and attorney's fees incurred herein to date.

       **IT IS SO ORDERED**.

       **DONE** this 7th day of February, 2007, at Galveston, Texas.

                Samuel B. Kent
                United States District Judge